UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD SCHOMAKER,

        Plaintiff,

v.

GENERAL MOTORS, INC., *et al.*,

        Defendants.
_____/

Case No. 1:10-cv-765

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action in which plaintiff has alleged that defendants engaged in race discrimination in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and sex discrimination in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). This matter is now before the court on defendant General Motors LLC's motion to dismiss (docket no. 10), defendant David Stroup, Steven Tomaszewski and Raymond Tessier's motion to dismiss (docket no. 12), plaintiff's motion for leave to file amended complaint (docket no. 19), and plaintiff's motion for a default judgment (docket no. 23).

**I.    Background**

Plaintiff filed his original complaint for violation of Title VII and the EPA on August 2, 2010. *See* Compl. (docket no. 1). The original complaint named as defendants two corporations, "General Motors a.k.a. New General Motors, a.k.a. General Motors Company, a.k.a. General Motors Corporation," "Haas TCM, Inc.," and 35 individual defendants. *Id.* The original complaint was never served. Plaintiff filed an amended complaint on December 1, 2010, naming as defendants

"General Motors Company, a.k.a. New General Motors," David Stroup, Steven Tomaszewski and Raymond Tessier. *See* Amend. Compl. (docket no. 8).

In his amended complaint, plaintiff alleged a violations of Title VII, 42 U.S.C. § 2000e *et seq.* and the EPA, 29 U.S.C. § 206(d). With respect to Title VII, plaintiff alleged that he was dismissed from his position as an environmental engineer on March 24, 2009, because he "[w]as denied a job sought through internal system because I was the chosen victim in a sustained pattern of discriminatory behavior." Amend. Compl. at ¶¶ 6-7. Plaintiff stated that he was treated differently because of his race, color, sex, religion or national origin, listing four women whom he identified as "white females, black females." *Id.* at ¶ 7. Plaintiff did not provide a narrative factual statement in the space provided on the provided the form complaint.

Plaintiff alleged that defendants violated his civil rights by: failure to hire plaintiff; termination of plaintiff's employment; demotion of plaintiff; denial of promotion or job bid to plaintiff; "[d]enied the same terms and conditions of employment given to other employees but denied plaintiff because of race, color, sex, religion or national origin;" and "other acts," i.e., "Refusal to provide information regarding exposure to chemical. Threat of dismissal if pursued information." *Id.* at ¶ 8. Plaintiff alleged that defendants violated Title VII because of his race and sex. *Id.* at ¶ 9. Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on March 2, 2010. *Id.* at ¶ 10. Plaintiff seeks unspecified injunctive relief, damages, "reinstatement where appropriate" and costs. *Id.* at ¶ 15.

With respect to the EPA, plaintiff alleged that at the time of the violation, he held the job of "Routine Chemist/Metallurgist - Environmental Chemist - Environmental Engr." *Id.* at ¶ 19.

He identified four women, each of whom was an environmental engineer, who were paid more than plaintiff because of his sex. *Id.* Plaintiff set forth the following factual account:

> Plaintiff was relegated to a category of employees who are deliberately underpaid and under promoted. This is done because some portion of the white male workforce must be treated thus to enhance the management's ability to promote white males in managers' favor before other ethnic or gender characterized individuals. The white males chosen for underpayment must remain so throughout their careers, as this is the reliable way to enhance GM's EEO profile while permitting promotion of social favorites. To accomplish this, annual evaluations were systematically structure [sic] with the intent to insure a lack of confidence in the employee by anyone interested in that undervalued employee.

*Id.* at ¶ 19.

Plaintiff alleged that defendants violated the EPA by using sex as a determining factor for pay and that defendants' conduct was willful. *Id.* at ¶ 20. Plaintiff filed charges with the EEOC on March 2, 2010. *Id.* at ¶ 22. For relief, plaintiff seeks such relief as may be appropriate, "including liquidated damages, costs and attorney's fees." *Id.* at ¶ 26.

### II. Defendants' motions to dismiss

### A. Legal Standard

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) seeks to dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"). A plaintiff's obligation to provide the defendants with a statement of his claim is obligated to provide "more than labels and conclusions." *Id.* Rather,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

In resolving motions to dismiss, the court has a duty to construe a *pro se* complaint liberally. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F. 2d 1220, 1223-24 (6th Cir. 1987). However, there are limits to the court's "liberal construction" of a *pro se* complaint. For example, the court cannot rewrite a complaint to include claims that were never presented, "conjure up unpled allegations" or "create a claim." *Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009). "[T]to hold otherwise would require the court 'to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.' *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985)." *Id.*

4

### B. Plaintiff's Title VII claims

Plaintiff seeks relief under Title VII, which contains a general anti-discrimination provision making it an unlawful employment practice for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

§ 2000e-2(a)(1). Under Title VII, an employer is defined as a "person," which "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers" who are

> engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

42 U.S.C § 2000e(a) and (b).

#### 1. Plaintiff's claims against General Motors LLC a/k/a New GM

Defendant New GM contends that it is entitled to dismissal of the Title VII action. The court agrees. Plaintiff is suing the current General Motors ("New GM"), for discrimination in the course of his employment which was terminated on March 24, 2009. Plaintiff, however, was employed by the previous General Motors Corporation ("Old GM"), which filed for bankruptcy on

June 1, 2009, a few months after plaintiff's employment was terminated. The bankruptcy procedure was summarized by one court as follows:

> General Motors Corporation and certain of its affiliates (collectively, "GM" or the "Debtors") each commenced a case under chapter 11 of title 11, United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on June 1, 2009 (the "Commencement Date") and immediately thereafter moved for approval of the sale of substantially all of their assets to a United States Treasury-sponsored purchaser, NGMCO, Inc. n/k/a General Motors, LLC (the "Purchaser" or "New GM"), pursuant to Section 363 of the Bankruptcy Code (the "Sale" or the "363 Transaction"). The Bankruptcy Court entered an order approving the 363 Transaction dated July 5, 2009 (the "Sale Order"), and issued an 87–page written decision, *In re General Motors Corp.*, 407 B.R. 463 (Bankr.S.D.N.Y.2009) (the "Sale Opinion" or "Sale Op.").

*In re Motors Liquidation Company*, 430 B.R. 65, 70 (S.D.N.Y. 2010).[1]

Defendants have filed supplemental documents in support of their motion to dismiss, which include an additional bankruptcy court order entered on July 5, 2009. *See In re General Motors Corp.*, No. 09-50026 (Bankr. S.D. N.Y. July 5, 2009) ("Order (I) Authorizing sale of assets pursuant to amended and restated master sale and purchase agreement with NGMCO, Inc., a U.S. Treasury-sponsored purchaser; (II) Authorizing assumption and assignment of certain executory contracts and unexpired leases in connection with the sale; and (III) Granting related relief") (docket no. 26-1). This additional bankruptcy order incorporated the amended Master Sale and Purchase Agreement ("MPA") between General Motors Corporation ("Old GM") and NGMCO, Inc. ("New

---

[1] *Pro se* plaintiff has expressed some confusion identifying "Old GM" and "New GM." During the bankruptcy, General Motors Corporation or (Old GM) changed its name to Motors Liquidation Company. *See In re General Motors Corp.*, No. 09-50026 (Amended notice of change of case caption) (July 10, 2009). General Motors LLC (New GM) is the successor in interest to Vehicle Acquisition Holdings, LLC and NGMCO, Inc. (the latter entity having purchased substantially all of Old GM's assets during the bankruptcy). *See* Order (docket no. 26-1 at p. 1); *In re Motors Liquidation Company*, 447 B.R. 142, 143-45 (Bankr. S.D. N.Y.) (2011)*; In re Motors Liquidation Company*, 439 B.R. 339, 340 (Bankr. S.D. N.Y.) (2010); *In re Motors Liquidation Company*, 430 B.R. at 70; *In re General Motors Corp.*, 407 B.R. at 473.

GM"), authorized Old GM to sell certain assets to New GM, and authorized New GM to assume certain liabilities of Old GM.

Under the terms of the MPA, New GM's "Assumed and Retained Liabilities" did not include plaintiff's discrimination claim against Old GM. The assumed and retained liabilities are set forth in Section 2.3 of the MPA, which provides in pertinent part as follows:

*Section 2.3 Assumed and Retained Liabilities*.

(a) The "Assumed Liabilities" shall consist only of the following Liabilities of Sellers: . . .

> (xiii) (A) all Employment-Related Obligations and (B) Liabilities under any Assumed Plan, in each case, relating to any Employee that is or was covered by the UAW Collective Bargaining Agreement, except for Retained Workers Compensation Claims. . .

MPA (docket no. 26-1 at pp. 85-87).

The term "Employee-Related Obligations" referred to in Section 2.3(a)(xiii)(A) is defined in the MPA as follows:

"Employment-Related Obligations" means all Liabilities arising out of, related to, in respect of or in connection with employment relationships or alleged or potential employment relationships with Sellers or any Affiliate of Sellers relating to Employees, leased employees, applicants, and/or independent contractors or those individuals who are deemed to be employees of Sellers or any Affiliate of Sellers by Contract or Law, whether filed or asserted before, on or after the Closing. **"Employment-Related Obligations" includes Claims relating to discrimination**, torts, compensation for services (and related employment and withholding Taxes), workers' compensation or similar benefits and payments on account of occupational illnesses and injuries, employment Contracts, Collective Bargaining Agreements, grievances originating under a Collective Bargaining Agreement, wrongful discharge, invasion of privacy, infliction of emotional distress, defamation, slander, provision of leave under the Family and Medical Leave Act of 1993, as amended, or other similar Laws, car programs, relocation, expense-reporting, Tax protection policies, Claims arising out of WARN or employment, terms of employment, transfers, re-levels, demotions, failure to hire, failure to promote, compensation policies, practices and treatment, termination of employment, harassment, pay equity, employee benefits (including post-employment welfare and other benefits),

>employee treatment, employee suggestions or ideas, fiduciary performance, employment practices, the modification or termination of Benefit Plans or employee benefit plans, policies, programs, agreements and arrangements of Purchaser, including decisions to provide plans that are different from Benefit Plans, and the like. Without limiting the generality of the foregoing, with respect to any Employees, leased employees, and/or independent contractors or those individuals who are deemed to be employees of Sellers or any Affiliate of Sellers by Contract or Law, "Employment-Related Obligations" includes payroll and social security Taxes, contributions (whether required or voluntary) to any retirement, health and welfare or similar plan or arrangement, notice, severance or similar payments required under Law, and obligations under Law with respect to occupational injuries and illnesses.

MPA (docket no. 26-1 at p. 64) (emphasis added).

In addition, the MPA provided for the assumption of certain liabilities as set forth in Section 6.17, such as transferred employees (6.17(a)) and employees of purchased subsidiaries (6.17(b)). *Id.* at Section 6.17 (docket no. 26-1 at pp. 131-36).

The MPA further provided that,

>Each Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability of any Seller, whether occurring or accruing before, at or after the Closing, other than the Assumed Liabilities. In furtherance and not in limitation of the foregoing, and in all cases with the exception of the Assumed Liabilities, neither Purchaser nor any of its Affiliates shall assume, or be deemed to have assumed, any Indebtedness, Claim or other Liability of any Seller or any predecessor, Subsidiary or Affiliate of any Seller whatsoever, whether occurring or accruing before, at or after the Closing, including the following (collectively, the "Retained Liabilities"): . . .
>
>>(vii)   all Employment-Related Obligations not otherwise assumed in Section 2.3(a) and Section 6.17, including those arising out of, relating to, in respect of or in connection with the employment, potential employment or termination of employment of any individual (other than any Employee that is or was covered by the UAW Collective Bargaining Agreement) (A) prior to or at the Closing (including any severance policy, plan or program that exists or arises, or may be deemed to exist or arise, as a result of, or in connection with, the transactions contemplated by this Agreement) or (B) who is not a Transferred Employee arising after the Closing and with respect to both clauses (A) and (B) above, including any

>> Liability arising out of, relating to, in respect of or in connection with any Collective Bargaining Agreement (other than the UAW Collective Bargaining Agreement) . . .

*Id.* at Section 2.3(b) (docket no. 26-1 at pp. 87-88).

When it approved Old GM's sale of its assets under the MPA, the bankruptcy court addressed the apportionment of liability for employee-related obligations, summarizing the liabilities assumed by New GM and the liabilities retained by Old GM:

> *(b) Assumed and Excluded Liabilities*
>
> Old GM will retain all liabilities except those defined in the MPA as "**Assumed Liabilities**." The Assumed Liabilities include: . . .
>
>> (iii) all employment-related obligations and liabilities under any assumed employee benefit plan relating to employees that are or were covered by the UAW collective bargaining agreement; . . .
>
> The liabilities being retained by Old GM include: . . .
>
>> (v) employment-related obligations not otherwise assumed, including, among other obligations, those arising out of the employment, potential employment, or termination of any individual (other than an employee covered by the UAW collective bargaining agreement) prior to or at the Closing.

*In re General Motors Corp.*, 407 B.R. at 481-82 (emphasis in original).

Plaintiff's discrimination claims fall within the definition of employment-related obligations under the MPA. Because plaintiff did not allege that he was an employee covered by the UAW collective bargaining agreement, his claims are among those employment-related obligations retained by Old GM (i.e., claims arising out of the employment or termination of an individual "other than an employee covered by the UAW collective bargaining agreement"). *See* MPA (docket no. 26-1 at pp. 64, 85-88, 131-36); *In re General Motors Corp.*, 407 B.R. at 481-82. New GM neither employed plaintiff prior to his termination on March 24, 2009, nor assumed

liability for any discrimination claims that arose from plaintiff's employment at Old GM under the terms of the MPA.  Accordingly, New GM's motion to dismiss should be granted as to plaintiff's Title VII claim.

### 2. Plaintiff's claims against the individual defendants

Plaintiff has also sued three individual defendants, David Stroup, Steven Tomaszewski and Raymond Tessier.  Supervisors, sued in their individual capacities, are not included within the statutory definition of "employer" under Title VII and its sister civil rights statutes, including the ADEA, ADA and Rehabilitation Act, and accordingly cannot be held personally liable for discrimination.  *Hiler v. Brown*, 177 F.3d 542, 546, fn. 5 (6th Cir. 1999) (collecting cases and noting that the ADA, ADEA and Rehabilitation Act borrowed the definition of "employer" from Title VII).  *See Ford v. Tennessee Human Rights Commission*, No. 99-5415, 2000 WL 125903 at *1 (6th Cir. Jan. 28, 2000) (plaintiff's claims were not cognizable as to the individual defendants because "Title VII and the ADEA do not permit employees and supervisors to be sued in their individual capacities"); *Wathen v. General Electric Co.*, 115 F.3d 400, 404 (6th Cir. 1997) (an individual employee/supervisor who does not otherwise qualify as an "employer" may not be held personally liable under Title VII and discrimination statutes which mirror Title VII); *Howard v. DaimlerChrysler Corp.*, 290 F.Supp.2d 784, 791-92 (E.D. Mich.2003) ("[t]he Sixth Circuit Court of Appeals has rejected the concept of individual liability under Title VII, the ADA, and the ADEA") (listing cases).  Plaintiff cannot state a claim for relief against the individual defendants for violation of the Title VII.  Accordingly, defendants Stroup, Tomaszewski and Tessier's motion to dismiss should be granted as to the Title VII claim.

### C. EPA

The EPA, 29 U.S.C. § 206(d) was enacted in 1963 as an amendment to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq. See Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, 451 U.S. 77, 79 (1981). The EPA prohibits sex discrimination as follows:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

In order to hold a defendant individually liable under the EPA, the defendant must be an "employer" as defined in § 203(d) of the FLSA. *Dixon v. University of Toledo*, 638 F.Supp.2d 847, 854 (N.D. Ohio 2009); 29 U.S.C. §§ 203(d); 206. Under the FLSA, an employer includes "any person" (i.e., an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons) "acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. §§ 203(a); 203(d).

### 1.   Plaintiff's claims against New GM

As previously discussed, New GM neither employed plaintiff nor assumed liability for any discrimination claim that arose from plaintiff's employment at Old GM.  Accordingly, New GM's motion to dismiss should be granted as to plaintiff's EPA claim.

### 2.   Plaintiff's claims against the Individual defendants

Whether an individual is an "employer" as defined in § 203(d) of the FLSA is a matter of law.  *See Department of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir. 1995).  "[T]he test to be applied in determining whether a person is an 'employer' responsible for FLSA obligations is one of 'economic reality.'"  *Id.*, quoting *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994).  It is possible for more than one "employer" to be responsible for FLSA obligations.  *Cole Enterprises, Inc.*, 62 F.3d at 778.

> Thus, a corporate officer who has operational control of the corporation's covered enterprise is an "employer" under FLSA, along with the corporation itself.  One who is the chief executive officer of a corporation, has a significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions has operational control and qualifies as an "employer" for the purposes of FLSA.

*Id.* (internal citations omitted).  For example, where an individual was the president of a corporation, owned 50% of the corporation, was engaged in running the business, was authorized to issue checks on corporate accounts, and determined (along with his wife), the employment practices for the corporation's restaurant (e.g., hiring, firing, rates of pay and hours of work), such an individual could be considered an "employer" for purposes of the FLSA.  *Id.* at 778-79.

Here, plaintiff does not allege that any of the individual defendants had operational control over his position at the Old GM.  Indeed, plaintiff has provided no allegations of the wrongful acts committed by the three individual defendants, Stroup, Tomaszewski and Tessier.

Rather, plaintiff has simply listed these three defendants in the caption. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). *See also*, *Webb v. Caruso*, 1:06-cv-3, 2006 WL 416261 at *4 (W.D. Mich. Feb. 22, 2006) ("[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints").[2] Accordingly, defendants Stroup, Tomaszewski and Tessier's motion to dismiss should be granted as to plaintiff's EPA claim.

### III.    Motion to amend (docket no. 19)

On May 26, 2011, plaintiff filed a "Request for the court's leave to amend complaint 765 (to be more reflective of the component causes of action supporting the stated case)" (docket no. 19). As previously discussed, plaintiff filed an amended complaint on December 1, 2010. *See* docket no. 8. After a party has amended his complaint once as a matter of course, Fed. R. Civ. P. 15(a)(2) provides that a party may amend his pleading only with the court's leave which the court should "freely give leave when justice so requires." Plaintiff's motion should be denied because it failed to include a supporting brief as required by for failing to include a supporting brief pursuant to W.D. Mich. LCivR 7.1(a) (requiring motions to be accompanied by a supporting brief which "shall contain a concise statement of the reasons in support of the party's position and shall cite all applicable federal rules of procedure, all applicable local rules, and the other authorities upon which

---

[2] In this regard, the court notes that plaintiff's original charge of sex discrimination filed with the Michigan Department of Civil Rights does not name *any* individuals as the offending employer. *See* Charge of Discrimination (March 2, 2010) (docket no. 1-2). Rather, the employer is identified as "GENERAL MOTORS CO. Grand Blacn [sic] Weld Tool Center." *Id.*

the party relies"). Plaintiff did file a document on the same date entitled "Brief in support of the referenced complaint." *See* Brief (docket no. 18). However, it is unclear whether this rather confusing document referred to the pending amended complaint or a proposed second amended complaint. In addition, this document, which sets forth a chronology of various events which occurred at plaintiff's workplace from 1999 through 2009, does not include any legal argument and is not a supporting brief as contemplated by the court rules.

Even if plaintiff's motion to amend had been properly filed, the motion does not seek to correct the fatal defects identified in defendants' motion to dismiss. *See* discussion in § II, *supra*. Rather, the motion refers to matters not before the court and statements to be made in future filings, *e.g.*, plaintiff states that "[t]he primary complaint is more easily comprehended if the constituent events contributing to the overarching complaint can be seen in perspective" and that a future brief "will attempt to incorporate these component circumstances into a more cohesive document." Plaintiff has provided no basis to support the filing of a second amended complaint. The court may deny a motion to amend as futile if it would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Campbell v. BNSF Railway Company*, 600 F.3d 667, 677 (6th Cir. 2010). For these reasons, plaintiff's motion to amend (docket no. 19) should be denied.

### IV. Motion for default judgment (docket no. 23)

Finally, plaintiff has moved for default judgment. Plaintiff's motion is procedurally improper. Fed. R. Civ. P. 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." In turn, the entry of a default under is a prerequisite to entry of a default judgment under Fed. R. Civ. P. 55(b). *Ramada Franchise*

*Systems, Inc. v. Baroda Enterprises, LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004). The Clerk of the Court has not entered a default as to any defendant in this case. On the contrary, all defendants have entered an appearance in this action and have moved to dismiss plaintiff's claims. In the absence of a default, plaintiff's motion for a default judgment is not properly before the court. Accordingly, plaintiff's motion for default judgment (docket no. 23) should be denied.

### V.     Recommendation

For these reasons, I respectfully recommend that the motion to dismiss filed by defendant General Motors LLC (New GM) (docket no. 10) be **GRANTED**; that the motion to dismiss filed by defendants Stroup, Tomaszewski and Tessier (docket no. 12) be **GRANTED**; that plaintiff's motion to amend (docket no. 19) be **DENIED**; that plaintiff's motion for default judgment (docket no. 23) be **DENIED**; and that this action be **DISMISSED**.


Dated:  August 29, 2011                         /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).